UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: ) Bankruptcy No. 08 B 14401
) Chapter 13
JAMES W. MORTAKIS, ) Judge John H. Squires
)
Debtor. )

### MEMORANDUM OPINION

This matter comes before the Court on the application for compensation (the "Application") filed by Steven H. Mevorah & Associates (the "Attorneys") as attorneys for James W. Mortakis (the "Debtor"). In the Application, the Attorneys seek the sum of $3,500 plus costs advanced for services through confirmation in this Chapter 13 case (which supercedes the Chapter 7 petition originally filed). Glenn Stearns, the Chapter 13 Standing Trustee, (the "Trustee") partially opposes the Application. He maintains that compensation should be limited to the sum of $1,700 as disclosed in the Attorneys' original statement filed under Federal Rule of Bankruptcy Procedure 2016(b). In support of that position, the Trustee contends the underlying fee agreement between the Attorneys and the Debtor lacks clarity; the time and services rendered by the Attorneys during the Chapter 7 phase of the case resulted in wasted effort; the facts mandated that the case should have been filed under Chapter 13 from the outset; the case does not involve any unique or difficult issues; and the Attorneys expended unnecessary and excessive time.

After considering the record in this matter and the arguments of the parties, the Court sustains, in part, the Trustee's objection and allows the Attorneys' Application, in part, in the sum of $3,000 for fees, plus the costs advanced.

-2-

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

The material facts are not in dispute and the parties waived the opportunity for an evidentiary hearing. The Court takes judicial notice of all papers filed by the parties and the case docket. *See Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (stating that in resolving a motion to dismiss, a court can take judicial notice of matters of public record); *Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002) (noting that the bankruptcy judge did not err by taking judicial notice of the schedules filed in the bankruptcy case); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (stating that the court can take judicial notice of the contents of court records). These documents reveal the following undisputed facts.

On June 5, 2008, the Attorneys filed a Chapter 7 petition for the Debtor. It was accompanied by the required schedules, the statement of financial affairs, and statement of current monthly income. The Attorneys also filed a statement under Federal Rule of Bankruptcy Procedure 2016(b) (the "Rule 2016(b) statement") that disclosed that they had been paid the sum of $1,700 for their legal services rendered or to be rendered to the Debtor in connection with the bankruptcy case, and that there was no balance due from the Debtor.

-3-

Though balance sheet insolvent, the Debtor had significant monthly household income between him and his non-debtor spouse. This, in turn, prompted a filing on July 18, 2008, by William T. Neary, the United States Trustee, that the case should be presumed to be an abusive Chapter 7 petition under 11 U.S.C. § 707(b). Thereafter, on August 8, 2008, the United States Trustee filed a motion to dismiss the case. This produced the common riposte from the Debtor–a motion to convert the case to Chapter 13. That motion was granted on September 19, 2008, absent any objections.

On September 29, 2008, the Debtor filed a plan that provided for sixty months of varying payments in order to satisfy administrative priority payments for the Trustee's estimated fees and $1,800 in additional fees to the Attorneys. The plan reflected a projected dividend to the Debtor's unsecured creditors of approximately 15.80%. Hearings on confirmation were continued several times, and on January 14, 2009, the Attorneys filed a modified plan with some amended schedules that reflected, among other things, higher income for the Debtor's family unit. This produced a higher projected dividend for the unsecured creditors of approximately 29.54%. The Trustee recommended this plan for confirmation, and the Court confirmed the plan on January 23, 2009.

The Attorneys filed the instant fee application on February 20, 2009. The Trustee's response was filed on March 26, 2009, and on April 10, 2009, the Attorneys filed a reply. The Attorneys assert that after the case was converted to Chapter 13, the Debtor executed a fee agreement dated August 20, 2008 (the "Fee Agreement"). The Attorneys contend that portions of the Fee Agreement were taken from the Model Retention Agreement used in this District for flat fees in Chapter 13 cases. They maintain their form is not confusing or

contradictory as the Trustee contends. Moreover, the Attorneys note that the Debtor was recently married and that his non-debtor spouse had excessive non-marital debt, which accounted for a significant expense in the marital budget. Thus, it was not a foregone conclusion that the Debtor would be required to convert his case to Chapter 13. The Attorneys also conclude that their work was not unnecessary or excessive, and there was no double billing of time spent on this and other cases.

In connection with the Application, the Attorneys furnished itemized time summaries for the various firm members detailing the time and services expended from January 30, 2008 through January 21, 2009. The time totals 36.45 hours which, when multiplied by the members' hourly rate, would produce billable time of $6,113. The Trustee points out that the fees after the conversion of the case to Chapter 13 total $2,348.50. It is significant that only after the Trustee filed the instant objection did the Attorneys file an amended Rule 2016(b) statement that conforms to the Fee Agreement with the Debtor. The amended Rule 2016(b) statement reflects the parties have agreed to a total fee of $3,500; the Debtor has paid the Attorneys $1,700; and the balance due is $1,800–the amount reflected in both iterations of the plan filed in this case.

### III. DISCUSSION

A.  **11 U.S.C. § 329(b) and Federal Rule of Bankruptcy Procedure 2016**

Section 329(b) of the Bankruptcy Code effectively allows the Court to determine whether the fees charged are excessive and, if so, the Court may cancel any compensation agreement between the attorney and the client, or it may order the return of the excessive

-5-

portion of the fees to the debtor's estate or to the entity that made the payment. *See In re Wiredyne, Inc.*, 3 F.3d 1125, 1127 (7th Cir. 1993). In making this determination, courts are guided by 11 U.S.C. § 330 which sets forth a number of factors that Congress found relevant to an assessment of the value of the services. *Id.* at 1128. "Once a question has been raised about the reasonableness of the attorney's fee under [§] 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable." *In re Geraci*, 138 F.3d 314, 318 (7th Cir. 1998). The legislative history for § 329 notes that "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to *careful scrutiny*." H.R. REP. NO. 95-595, at 329 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 6285 (emphasis supplied).

Section 329(a) requires a debtor's attorney to "file with the court a statement of the compensation paid or agreed to be paid . . . and the source of such compensation." 11 U.S.C. § 329(a). Bankruptcy Rule 2016(b) establishes when the statement is to be filed and includes a provision requiring such disclosure "after any payment or agreement not previously disclosed." FED. R. BANKR. P. 2016(b). Fee disclosure under § 329 and the Rules is mandatory, not permissive. *In re Whaley*, 282 B.R. 38, 41 (Bankr. M.D. Fla. 2002). Failure to disclose (in this case, late disclosure of the amended fee statement) is sanctionable and can include partial or total denial of compensation, as well as partial or total disgorgement of fees already paid. *See In re Prod. Assocs., Ltd.*, 264 B.R. 180, 186, 189 (Bankr. N.D. Ill. 2001). The extent to which compensation should be denied rests with the Court's sound discretion. *See Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877,

-6-

882 (9th Cir. 1995). Many courts, perhaps the majority, punish defective disclosure by denying all compensation. *See, e.g., id.*; *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556, 1566 (10th Cir. 1993); *In re Griffin*, 313 B.R. 757, 764 (Bankr. N.D. Ill. 2004).

The facts of this case do not rise to the level of denying all compensation. It is most fortunate for the Attorneys that their amended Rule 2016(b) statement correctly reflects the principal terms of the Fee Agreement with the Debtor. Otherwise, they would have been held to the limits of their original Rule 2016(b) statement. *See In re Kowalski*, Bankr. No. 08 B 02290, 2009 WL 766219 (Bankr. N.D. Ill. Mar. 24, 2009).

**B.      The Fee Agreement Between the Debtor and the Attorneys**

The Fee Agreement between the Attorneys and the Debtor is worthy of review and comment. As previously noted, parts of the Agreement are drawn from the Model Retention Agreement utilized in this District. However, there are some marked differences. Perhaps the most significant deviation in the Fee Agreement is that it covers services only through plan confirmation.

Prior versions of the Model Retention Agreement had provided for the debtor and attorney to contract for a flat fee for services through either confirmation or case closing. Because some attorneys opted for the former and then asserted substantial claims for post-confirmation services (sometimes found excessive and unnecessary in the nature of churning the case for additional fees), the judges of this bankruptcy court, after consultation with the Standing Trustees, the United States Trustee, and the Chapter 13 debtors' and creditors' bar, eliminated the flat fee through confirmation. Thus, the current version of the Model

-7-

Retention Agreement allows flat fees through case closing at the rate of $3,500. The $3,500 rate set forth in the Model Retention Agreement establishes, generally, a ceiling on fees, with an exception for extraordinary circumstances, such as extended evidentiary hearings or appeals. In such instances, additional compensation may be sought with the attendant requirement of the itemization of time and services.

The Fee Agreement at bar deviates from the current Model Retention Agreement because it has a substantial number of extras that may be added to the $3,500 basic fee, which are categorized as "Non-Basic Fees & Services." These extras include a fee of $250 for each appearance at a continued 11 U.S.C. § 341 meeting of creditors and a $250 charge for each court appearance on motions regarding the automatic stay, denial of confirmation, or dismissal of the case. Furthermore, the Fee Agreement contains a $200 administrative fee, plus $250 per hour "for all attorney time and [$90] per hour for all paralegal work done on the file." It also provides that if the Debtor has not paid in full within twelve months from execution of the Fee Agreement, the Attorneys have the right to increase their fee to "Ten Percent plus an additional Ten Percent for each successive twelve month period time frame from the date the retainer is signed."

Latent and patent ambiguities in the above provisions aside, it seems clear that the Fee Agreement, while purporting to establish a flat fee through confirmation, really establishes a floor of $3,500 (not a ceiling) and adds potential costly extras based on an hourly and/or set fee for specific services, many of which are routinely encountered in most Chapter 13 cases. This is in stark contrast to the Attorneys' Application wherein the box was checked indicating that the Attorneys and the Debtor entered into the Model Retention

Agreement. The Court assumes this checkmark is the product of another typographical/proofreading error by the Attorneys along with the statement that they had received the sum of $1,999 from the Debtor. These points are problematic.

After careful review of the Fee Agreement, the Court concludes that the retainer paid to the Attorneys by the Debtor is properly characterized as a security retainer. *See Dowling v. Chi. Options Assocs., Inc.*, 875 N.E.2d 1012 (Ill. App. Ct. 2007). *Dowling* is significant for Illinois attorneys who are members of the District Court bar that practice here, like the Attorneys. They must meet the requirements of the Illinois Supreme Court and the District Court in order to comply with the relevant attorney-client relationship and fee agreement rules. In *Dowling*, the Illinois Supreme Court discussed advance payment retainer agreements. Specifically, the court noted that Illinois law recognizes three types of retainer agreements: advance payment retainers; classic or general retainers; and security retainers. *Id.* at 1018. The general and security retainers are well recognized under Illinois law. The general or classic retainer is paid by a client to a lawyer to secure the lawyer's availability during a specific period of time or for a specified matter. *Id.* Pursuant to a security retainer agreement, the funds paid to a lawyer are not present payment for future services. *Id.* The retainer is applied to pay for services that an attorney exhausts during representation. *Id.* Unlike the general retainer, the funds tendered to the attorney remain the client's property. *Id.*

The advance payment retainer is similar to the security retainer except ownership of the tendered funds passes immediately to the lawyer upon payment. *Id.* Generally, the client agrees to pay in advance for some or all of the services the lawyer is expected to perform

-9-

with respect to a particular legal issue. The pre-payment is applied against the lawyer's hourly fee, and the lawyer spends down the retainer as services are rendered.

The important difference between the security and advance payment retainer is ownership. A security retainer is owned by the client until the lawyer provides services to earn such fees or payment. On the other hand, the advance payment retainer belongs to the lawyer at the very moment it is tendered. This has particular relevance in the representation of debtors. "Paying the lawyer a security retainer means the funds remain the property of the client and may therefore be subject to the claims of the client's creditors." *Id.* at 1022. The critical element for the Attorneys is that different rules of professional conduct cover the actions of the Attorneys. The appropriate professional conduct demanded depends on the type of retainer identified in the Fee Agreement.

The Court finds that the Fee Agreement does not meet all the *Dowling* requirements. For example, the Fee Agreement does not state that the funds paid by the Debtor remain his until used to pay for services rendered and that the funds will be deposited in a client trust account. In addition, the Fee Agreement does not clearly state that an advance payment retainer was intended by the parties or the reasons the parties utilized that form of retainer, if such was intended. As a result, the Court concludes that the Fee Agreement should be construed as a security retainer. In sum, major revisions of this Fee Agreement are needed if the Attorneys want to conform to the *Dowling* requirements and continue to use a modified version of the Model Retention Agreement.

As a final observation, the Court finds that the Fee Agreement is not clear on the post-confirmation compensation terms between the Attorneys and the Debtor. Although the

"Non-Basic Fees & Services" portion of the Fee Agreement specifies certain charges or rates for eight enumerated matters, there is a broad panoply of potential necessary legal work for adequate representation of the Debtor post-confirmation, especially in this era of refinancing and new credit and loan needs. What rate or charge is expected therefor? The Fee Agreement is silent in this regard. Hence, the Trustee's lack of clarity point is well-taken. Despite what the Fee Agreement says, it is widely known and understood that the Attorneys represent the Debtor until they are allowed to withdraw under the Local Bankruptcy Rules. Their obligations to the Debtor do not cease after confirmation.

### C.     Work Performed by the Attorneys

Review of the Attorneys' time sheet summaries shows over thirty-six hours of billed time through January 21, 2009. Approximately nineteen hours of that time were expended during the pre-petition and post-petition Chapter 7 phase of the case. The remaining seventeen hours were expended during the pre-confirmation Chapter 13 phase of the case. The vast majority of the time was expended by one of the associates in the Attorneys' firm. Paralegal or support staff entries were merely nine in number and constitute less than $100 in billed time. Thus, very little work on the file was delegated to support staff and billed at their lower rate. There is some excessive time charged at one hour each for attending the three confirmation hearings, which lasted only several minutes each, the preparation of the instant Application, and some minor interoffice conferencing as well as several "lumped" entries. The Court is mindful that this case may have necessarily involved more time and effort given the conversion. Nevertheless, the Court finds that $3,000 is a more appropriate amount to allow as reasonable and necessary compensation for the work performed in this

-11-

matter. The requested $3,500 is simply too much for the results obtained, notwithstanding the Debtor's agreement to pay this sum. The resultant allowance reasonably and adequately compensates the Attorneys who are encouraged to appropriately pursue Chapter 13 practice, but in a more efficient manner, and accurately report their time expended for their clients. Closer judicial scrutiny occurs when objections are raised in cases where attorneys do not use the Model Retention Agreement covering services through case closing as the vast majority of Chapter 13 debtors' attorneys have migrated to in this District.

### IV. CONCLUSION

For the foregoing reasons, the Attorneys' Application is allowed, in part, in the sum of $3,000 for fees, plus costs advanced. The Trustee's objection thereto is sustained, in part.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: 4/29/9

John H. Squires
United States Bankruptcy Judge

cc:    See attached Service List

## SERVICE LIST

### James W. Mortakis
### Bankruptcy Case No. 08 B 14401

Gregory M. Berg, Esq.
Steven H. Mevorah & Associates
900 E. Roosevelt Road
Lombard, IL 60148

Glenn B. Stearns
Chapter 13 Standing Trustee
4343 Commerce Court, Suite 120
Lisle, IL 60532

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604

James W. Mortakis
100 W. Roosevelt Road
#511
Bensenville, IL 60106